1

2

3

4

5           UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
6                      AT SEATTLE

7   SADIE B.,

8                      Plaintiff,              CASE NO. C17-5893-MAT

9          v.

10  NANCY A. BERRYHILL, Deputy                 ORDER  RE: SOCIAL SECURITY
    Commissioner of Social Security for        DISABILITY APPEAL
11  Operations,

12                     Defendant.

13

14          Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

15  the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's

16  application for Supplemental Security Income (SSI) after a hearing before an Administrative Law

17  Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all

18  memoranda, this matter is AFFIRMED.

19                    **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1966.[1]  She graduated high school and previously worked as

21  an industrial cleaner and cannery worker.  (AR 50, 540.)

22
    _____
23          [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

    ORDER
    PAGE - 1

Plaintiff has a prior SSI claim not under consideration, but relevant to her claims. She filed the prior application in May 2009 and received unfavorable decisions dated April 29, 2011 and August 25, 2015. (*See* AR 524, n.1.) Both decisions addressed the period from May 19, 2009 through April 30, 2011, and the Ninth Circuit Court of Appeals affirmed the claim denial. *Burkett v. Berryhill*, No. 17-35180, 2018 U.S. App. LEXIS 11183 (9th Cir. May 1, 2018).

Plaintiff protectively filed the SSI application currently under consideration in July 2011, alleging disability beginning July 15, 2008. (AR 240.) The claim was denied initially and on reconsideration. On January 3, 2013, ALJ Scott Morris held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 39-89.) Plaintiff amended the alleged onset date to May 1, 2011 at hearing. On January 25, 2013, ALJ Morris issued a decision finding plaintiff not disabled. (AR 19-34.)

Plaintiff timely appealed, the Appeals Council denied review (AR 1-6), and plaintiff initiated a civil action. On March 15, 2016, this Court remanded plaintiff's claim for further proceedings. (AR 648-58.) The Court found error in the failure to sufficiently address a limitation in the ability to persist assessed by non-examining State agency physicians. (*Id*.) On remand, the Appeals Council directed the ALJ to offer a new hearing and to issue a new decision for the period beginning May 1, 2011. (AR 659-61.)

Both plaintiff and a VE appeared and testified at a hearing on November 15, 2016 before ALJ S. Andrew Grace. (AR 552-602.) By Order dated July 3, 2017, ALJ Grace issued a partially favorable decision, finding plaintiff not disabled from May 1, 2011 to February 1, 2016, but disabled as of February 1, 2016 through the date of the decision. (AR 524-42.)[2] Plaintiff appealed

---

[2] Plaintiff filed another SSI application in March 2016, alleging disability beginning July 15, 2008. (AR 821.) The ALJ found no evidence the application had been escalated to the hearing level, clarified that

1    that final decision to this Court.

2                                  **JURISDICTION**

3        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

4                                  **DISCUSSION**

5        The Commissioner follows a five-step sequential evaluation process for determining

6    whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

7    be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

8    engaged in substantial gainful activity since the May 1, 2011 alleged onset date.  At step two, it

9    must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe:

10   chronic kidney disease; degenerative joint disease of the right knee status post surgery; obesity;

11   hypertension; left wrist fistula; posttraumatic stress disorder (PTSD); depression; adjustment

12   disorder with mixed emotional features; and dependent personality disorder.  Step three asks

13   whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's

14   impairments did not meet or equal the criteria of a listed impairment.

15        If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

16   residual functional capacity (RFC) and determine at step four whether the claimant has

17   demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform

18   sedentary work as defined in 20 C.F.R. § 416.967(a), except she should never operate foot controls

19   or engage in overhead reaching, climb ladders, ropes, or scaffolds, or crawl; could  occasionally

20   climb ramps or stairs, balance, stoop, kneel, and crouch and frequently handle with non-dominant

21   left hand; should avoid concentrated exposure to extreme cold, vibrations, and hazards; could

22   ───────────────────

23   his decision addressed the period beginning May 1, 2011, and stated the prior time period was addressed
     by the separate application at that time on appeal at the Ninth Circuit.

ORDER
PAGE - 3

perform simple, routine, and repetitive tasks, consistent with unskilled work, and low-stress work, requiring few decisions and few changes; could have occasional contact with the public and coworkers; and could perform at a standard or ordinary pace, but not at a strict production rate pace, with no control over the speed of work, such as a conveyor belt-type of job. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, and for the period of time from May 1, 2011 to February 1, 2016, the ALJ found plaintiff capable of performing other jobs, such as work as a document preparer, final assembler, and table worker. Beginning February 1, 2016, when plaintiff's age category changed to an individual closely approaching advanced age, Medical-Vocational Rule 201.14 directed a finding of disability and entitlement to SSI.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

ORDER
PAGE - 4

Plaintiff avers error in the evaluation of the medical evidence dated between May 1, 2011 and January 31, 2016 and, for that same time period, in the evaluation of her testimony regarding her limitations, lay testimony, and the RFC and step five conclusion. She requests that the Court affirm the decision for the period beginning February 1, 2016 and remand for an award of benefits beginning May 1, 2011 or, alternatively, for further proceedings addressing the earlier time period. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Evidence</u>

Plaintiff avers error in the consideration of evidence from physician assistant Jamie Nixon and non-examining State agency psychologists Drs. Carla van Dam and Patricia Kraft. She also asserts error in relation to a variety of other medical evidence in the record.

The regulations applicable to plaintiff's SSI claim distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including physician assistants, are considered "other sources." 20 C.F.R. §§ 416.902, 416.913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[3] In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must provide clear and convincing reasons for rejecting the opinion of a physician where it is not contradicted by another physician, or specific and

_____

[3] New regulations, applicable to claims filed after March 27, 2017, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," and recognize other licensed heath care workers as "medical sources" and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e).

legitimate reasons, supported by substantial evidence, for rejecting a physician's contradicted opinion. *Id*. at 830-31. The ALJ may assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may discount their opinions by providing reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.    Jamie Nixon, PA-C

In May 2011, treating physician assistant Nixon opined in a form for the Department of Social and Health Services (DSHS) that plaintiff's work function was impaired for six months by "chronic kidney failure pending dialysis," her condition was deteriorating, and she could stand for one hour and sit for eight hours in an eight-hour work day and lift ten pounds occasionally and five pounds frequently. (AR 357-58.) Plaintiff was on multiple sedating hypertensive medications, deals with depression and anxiety, and was a victim of emotional abuse.

The ALJ assigned great weight to the lifting limitation, but little weight to the limitation on standing. (AR 535.) The significant limitation on standing lacked explanation or support by the record, which contained "very limited or otherwise largely unremarkable treatment records related to the time period beginning with the amended alleged onset date and continuing into 2012." (AR 535-36.) Prior to this assessment, Nixon had not seem plaintiff since October 2010. (AR 536.) The overall lack of treatment around this time strongly suggested plaintiff was not as functionally limited as indicated. Nixon, moreover, appeared to be under the impression plaintiff's kidney disease was more limiting than the record reflected, given that plaintiff never required dialysis. The ALJ accorded some weight to Nixon's statements regarding depression, anxiety, and emotional abuse, finding them largely consistent with the nature of plaintiff's mental impairments. He found the opinions of Drs. van Dam and Kraft more informative given that, unlike Nixon, they assigned specific mental functional limitations.

In another DSHS form completed in October 2011, Nixon opined plaintiff could lift a maximum of twenty pounds and frequently lift or carry ten pounds and could sit for most of the day if walking or standing is limited to only brief periods. (AR 870-71.) The ALJ assigned greater weight to this assessment, finding it more generally consistent with the record as a whole and the overall lack of findings supporting the previously assessed limitation on standing. (AR 537.) In light of additional evidence of physical functioning received since this later assessment, including plaintiff's subjective complaints at the initial and remand hearings, the ALJ included some limitations in physical functioning, including a limitation to only sedentary-level work.

The ALJ also noted the existence of earlier assessments from Nixon on May 15, 2009 (AR 847-50) and March 25, 2011 (AR 948-50). This and other opinion evidence related to plaintiff's functioning prior to the May 1, 2011 amended alleged onset date, and during a period covered by a prior SSI application at that time pending appeal at the District Court level. The ALJ accorded these opinions little to no weight, finding them "largely irrelevant" to plaintiff's functioning during the period at issue. (AR 539.)

Plaintiff denies any indication her mental functioning ever improved beyond the level Nixon described in March 2011, only five weeks prior to the amended alleged onset date. She argues the ALJ could not simply disregard this opinion without explanation given its close proximity to the relevant time period and the fact she amended the onset date only because the prior ALJ decision prevented ALJ Grace from considering the issue of disability for the earlier time period. Also, the ALJ is required to evaluate every medical opinion and to base the RFC on all evidence of record. *See* 20 C.F.R. §§ 416.927(c), 416.945(a)(3).

The ALJ did not decline to assess Nixon's March 2011 opinion solely because it predated the alleged onset date. He also considered that the opinion fell within a time period then subject

to review in a pending court appeal. (AR 539.) Similarly, despite its close proximity to the period under consideration, the Ninth Circuit later found Nixon's May 2011 opinion neither significant, nor probative because it "fell outside the disability period at issue: May 19, 2009 through April 30, 2011." *Burkett v. Berryhill*, No. 17-35180, 2018 U.S. App. LEXIS 11183 *5 (9th Cir. May 1, 2018) ("Evidence concerning Burkett's symptoms and limitations outside the alleged period of disability does not qualify as significant or probative.") (citations omitted). Further, even if it could be said the ALJ erred in failing to assess the opinion in relation to the time period at issue, plaintiff does not demonstrate harm. She does not show, for example, the no more than moderate functional limitations assessed by Nixon in March 2011 were not sufficiently accounted for in the RFC limitations to simple, routine, and repetitive tasks consistent with unskilled work, low-stress work entailing few decisions and few changes, only occasional contact with the public and coworkers, and performance at a standard or ordinary pace, and not a strict production rate pace. (AR 529; AR 948-50 (finding plaintiff moderately limited in understanding and remembering short and simple and detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, and completing a normal work day and week).)

Nor did the ALJ err in considering Nixon's May and October 2011 opinions. "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where there is more than one rational interpretation of evidence, the ALJ's conclusion must be upheld. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ reasonably rejected the standing limitation assessed by Nixon in May 2011 as

unexplained, unsupported, inconsistent with the lack of treatment, and coming some seven months after Nixon last provided treatment. *See* 20 C.F.R. § 416.927(c)(2), (3), and (6) (factors relevant to assessment of opinion evidence include the length, nature, and extent of treatment relationship and the frequency of examination; "The better an explanation a source provides for an opinion, the more weight we will give that opinion."; ALJ may also consider any other factors tending to support or contradict a medical opinion); and *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject medical opinion based on inconsistency with the record). The ALJ also rationally considered that the actual status of plaintiff's kidney disease and course of treatment differed from Nixon's May 2011 consideration of plaintiff as "pending dialysis." Plaintiff counters that her treating physician Dr. Julia Anuras continued to assess her kidney disease as stage four through September 2011. (AR 505.) However, it remains that plaintiff did not require dialysis, that Dr. Anuras identified her stage four kidney disease as "stable if not improving function" in September 2011 (*id*.), and that, by December 2012, her condition reached "stage 3 – with improving function" (AR 875-76). (*See also* AR 877-78 (September 2013: stage 3, improving function); AR 879-80 (May 2014: stage 3, stable function); and AR 953 (September 2014: stage 3, well controlled).)[4] These numerous germane reasons sufficed to support the ALJ's rejection of a limitation to one hour of standing.

The ALJ further reasonably assigned greater weight to the opinion Nixon gave five months later, finding plaintiff able to lift and carry more, sit for most of the day, and walk or stand for

---

[4] The Commissioner notes Nixon's May 2011 opinion assessed six-month limitations, falling under the twelve months required to establish a disability. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). However, the Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).

brief periods. This did not require the ALJ to include these limitations verbatim in the RFC. The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." SSR 96-5P; *accord* 20 C.F.R. §§ 416.927 (d)(2), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015). An RFC need not directly correspond to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). The ALJ's finding plaintiff could perform sedentary work, which by definition requires only occasional walking and standing, adequately accounted for Nixon's October 2011 opinion. *See* 20 C.F.R. § 416.967(a) ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); SSR 96-9p ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.") Having accounted for Nixon's opinion, the ALJ need not have provided further explanation.

B.    Drs. Carla van Dam and Patricia Kraft

On August 25, 2011, Dr. van Dam opined plaintiff could perform simple, repetitive work, as well as some more detailed complex tasks if given ample time and support, that her mental health symptoms would occasionally interfere with her ability to persist for a normal workday/week, and that she has expressed anxiety around strangers and would work best in an environment that does not exclusively interact with the general public. (AR 119-20.) On

September 28, 2011, Dr. Kraft concurred with the assessment regarding simple, repetitive work and more detailed and complex tasks, working with the general public, and occasional interference with the ability to persist, but found plaintiff capable of sustained concentration, pace, and persistence and appropriate interaction with co-workers and supervisors. (AR 133-34.)

The ALJ gave these opinions partial weight. (AR 536.) He assigned overall great weight to limitations in social and cognitive functioning given that they accounted for the nature of plaintiff's mental impairments and were largely consistent with the record in showing some deficits in both of these areas. In light of additional evidence received after Dr. Kraft's review, including plaintiff's testimony, the ALJ also included some additional limitations in social and cognitive functioning. (AR 536-37.) The ALJ assigned very little weight to the opinions regarding plaintiff's ability to persist. Referring back to his earlier description of the overall lack of mental health treatment, including no treatment after 2012 and until September 2016, and the numerous unremarkable objective findings associated with mental functioning, the ALJ found this portion of the opinions generally not supported by the medical evidence. (AR 537.)

Plaintiff argues the fact she stopped getting mental health treatment because she did not find it to be helpful and the fact some clinical findings were unremarkable did not justify rejection of the opinion regarding persistence. She cites to her testimony she stopped going to treatment in September 2012 because it "[w]asn't helping", when she called to get a different counselor someone told her it was time to take a break, and she "really couldn't find anybody that would take . . . that medical." (AR 537.) She also points to the record as including some mental health findings supporting her claim. (*See, e.g.*, AR 459-60, 486, 489, 490, 494.)

The ALJ did not state there were no objective findings. He found numerous objective findings largely unremarkable, and earlier in the decision contrasted those unremarkable findings

with some observations and symptom reporting; described evidence of plaintiff's social and cognitive abilities; and discussed the absence of treatment after 2012 and up until August 2016. (AR 534-35.) Plaintiff offers an alternative view, but does not demonstrate the ALJ's interpretation was not rational. The ALJ also considered plaintiff's testimony. Although plaintiff reported her initial course of mental health treatment came to an end due to lack of funding, objective findings when she was not in treatment were largely unremarkable. (AR 535 (describing examination findings from December 2012 through November 2014).)

An ALJ may reject a physician's opinion upon finding it inconsistent with the medical evidence and/or the course of treatment. *Tommasetti*, 533 F.3d at 1041; *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(4). The ALJ's rejection of the 2011 opinions as to plaintiff's ability to persist is rational and supported by substantial evidence.

C.     Other Medical Opinion Evidence

Plaintiff provides a lengthy description of numerous other medical records, including two 2009 treatment notes from Dr. Anuras not included in the record. (Dkt. 12 at 6-11 and Ex. A.) She maintains the ALJ improperly failed to include the 2009 treatment notes, that those notes and the other medical records support her testimony about her limitations, and that the ALJ's failure to properly evaluate this evidence was harmful error.

The ALJ addressed the 2009 treatment notes from Dr. Anuras in both a January 2017 letter to counsel and in the July 2017 decision. (AR 525, 834.) The ALJ took note of plaintiff's prior SSI application, the two ALJ decisions addressing that application and plaintiff's alleged disability through April 30, 2011, and the appeal of the second of those ALJ decisions then pending in this Court. (*See also* AR 525, 832 (noting that, in a November 2016 letter, plaintiff's representative requested the admission of medical evidence associated with plaintiff's prior SSI application).)

ORDER
PAGE - 12

The ALJ limited the admission of the additional medical evidence to only that relating to the period since the amended alleged onset date of May 1, 2011. (AR 525, 834.)

Plaintiff does not identify support for the alleged error in declining to include the 2009 treatment notes from Dr. Anuras in the record. Nor does plaintiff otherwise demonstrate error. As the Commissioner observes, plaintiff's summary of medical evidence is otherwise unaccompanied by a specific assignment of error and need not be addressed by the Court. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (9th Cir. 2008).

<u>Symptom Testimony</u>

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[5] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not fully supported. Contrary to plaintiff's contention, the ALJ provided several specific, clear, and convincing reasons in support of that conclusion.

A.    <u>Treatment</u>

In assessing symptom testimony, an ALJ properly considers evidence associated with

---

[5] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

treatment, 20 C.F.R. § 416.929(c)(3), SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039. *See also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."). The ALJ must consider reasons for a claimant's failure to seek or follow through with treatment. SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.")

The ALJ here found the limited number of treatment records addressing plaintiff's physical symptoms, and gaps in the treatment received, to call into question the existence of significant functional limitations during the early part of the period at issue, from the amended alleged onset date through 2012. (AR 531-32.) Similarly, plaintiff's failure to seek mental health treatment after 2012 and until August 2016 indicated her symptoms did not cause significant functional limitations for several years during the relevant time period. (AR 535.)

Plaintiff denies there is evidence of any additional available treatment that could have ameliorated her symptoms of dizziness, knee pain, and anxiety. The ALJ, however, rationally interpreted the evidence of minimal treatment to detract from plaintiff's testimony as to the severity of her impairments. The specific examples provided and a review of the evidence as a whole reveals substantial evidence support for his conclusion.

Plaintiff notes the ALJ's failure to acknowledge her explanation that she stopped getting counseling after 2012 because it was not helping and then discovered no other providers would accept her insurance. (AR 535, 583-84.) At hearing, plaintiff testified she "had a really bad taste in [her] mouth" for Behavioral Health Resources (BHR), her prior counseling provider. (AR 572.)

She subsequently agreed with her representative that she stopped the counseling because it "[w]asn't helping[,]" and added she was told it was time to take a break by someone at BHR and that she "couldn't really find anybody that would take – other than BHR, that medical." (AR 572, 584.) While the ALJ did not address every aspect of this testimony, he properly considered plaintiff's testimony associating the cessation of treatment with a lack of funding. (AR 535.) He further considered that, after plaintiff stopped treatment, objective findings were largely unremarkable, examination findings indicated any reported symptoms caused little, if any, resultant functional limitations, and that, in September 2014, plaintiff reported her depression and anxiety were well controlled with medication. (AR 535; citations to record omitted.) The Court finds the ALJ's interpretation of the evidence rational and his conclusions supported by substantial evidence.

B.    Medical Evidence

The ALJ found the evidence relating to plaintiff's physical functioning to reflect largely unremarkable findings, stability, good control, and improvement in her hypertension and kidney disease, to not support a worsening of symptoms, and to largely omit mention of her reported symptoms and limitations. (AR 531-33; citations to record omitted.) A physician assistant, in October 2011, did describe plaintiff's kidneys as "close to requiring dialysis" and noted "light headedness" due to her blood pressure medications. (AR 866.) However, given contemporaneous contradictory evidence from her treating nephrologist, as well as a March 2011 examination finding no apparent distress and noting no physical abnormalities, these observations appeared to rely on plaintiff's subjective complaints. (AR 532 (citing AR 866, 868).) Plaintiff's acknowledgement she never began dialysis indicated she had not experienced a significant worsening in her overall kidney function at any time during the period at issue. While she began

receiving assistance from a caregiver by September 2013, her need for such assistance was not clearly established by the medical evidence. (*Id.* (citing AR 877).) The ALJ found plaintiff's kidney-related impairment and hypertension continued to be routine, with largely stable findings, that her right knee impairment did not impact her functioning as significantly as she alleged and appeared to have improved given her ability to lose a significant amount of weight through walking, and that that same evidence contradicted the allegedly significant dizziness. (AR 533.) Also, although plaintiff testified at the initial hearing that she required use of a cane, she did not testify she continued to use an assistive device at the time of the remand hearing. This further indicated some improvement in her right knee functioning. The ALJ nonetheless added physical limitations to the RFC adopted in the prior ALJ decision.

The ALJ also added new mental limitations to the prior RFC in recognition of evidence supporting their inclusion, while pointing to other evidence as showing plaintiff was not any more limited. (AR 533-34.) The evidence through much of 2012 showed an overall limited effect on functioning and, even with ongoing symptoms similar to those described at hearing, plaintiff maintained largely intact mental functioning. (AR 534.) The evidence showed plaintiff's ability to socialize, that her cognitive and adaptive functioning remained largely intact, and included her report of reduced stress and improved anxiety. (AR 534-35.) The ALJ also considered the approximately four-year period in which plaintiff did not engage in mental health treatment and the largely unremarkable objective findings within that same period of time. (AR 535.) He found additional mental functioning limitations not supported by the record as a whole.

Plaintiff argues the absence of evidence of worsening is not a convincing reason for rejecting her testimony of knee pain or dizziness, and asserts the evidence does not show significant improvement in either area. She rejects the alleged reliance on her subjective

complaints, stating Dr. Anuras would not have ordered the placement of a fistula if she did not

believe dialysis was imminent and that the two omitted records from Dr. Anuras showed the fistula

was ordered due to kidney testing results at that time.  While she was able to lose forty pounds by

walking on a near daily basis, the ALJ did not acknowledge or include any convincing reasons for

rejecting her testimony her dizziness was worse for a couple of hours in the morning.  (AR 582-

83.)  Also, there is no evidence showing an absence of the mental health symptoms, including

nightmares and anxiety, described in plaintiff's testimony.

        "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence, the medical evidence is still a relevant factor in

determining the severity of the claimant's pain and its disabling effects."  *Rollins*, 261 F.3d at 857;

SSR 16-3p.  An ALJ therefore properly considers whether the medical evidence supports or is

consistent with a claimant's allegations.  *Id*.; 20 C.F.R. § 416.1529(c)(4) (symptoms are

determined to diminish capacity for basic work activities only to the extent the alleged functional

limitations and restrictions "can reasonably be accepted as consistent with the objective medical

evidence and other evidence.")  An ALJ may reject subjective testimony upon finding it

contradicted by or inconsistent with the medical record.  *Carmickle*, 533 F.3d at 1161; *Tonapetyan*

*v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  An ALJ also properly considers evidence of

improvement and favorable response to treatment.  *Tommasetti*, 533 F.3d at 1040; *Morgan*, 169

F.3d at 599-600.  *See also Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006)

("Impairments that can be controlled effectively with medication are not disabling for the purpose

of determining eligibility for SSI benefits.").

        The ALJ here rationally construed the record to support the existence of both physical and

mental limitations in functioning, but inconsistent with the degree of impairment alleged by

ORDER
PAGE - 17

plaintiff. The ALJ also appropriately considered the evidence of stability and improvement. For example, and as described in the ALJ's decision, while plaintiff gained weight following her knee surgery, her knee impairment eventually improved to the point where she was able to lose a significant amount of weight through walking. Contrary to plaintiff's contention, the ALJ acknowledged her testimony of significant dizziness in the morning after taking her medications. (AR 530.) However, in providing specific, clear, and convincing reasons, the ALJ was not required to accept plaintiff's testimony as to the degree of her impairment.

The ALJ also rationally construed a treatment note to reflect reliance on plaintiff's subjective reporting. *Cf. Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.") A month prior to the description of plaintiff as "close to requiring dialysis" (AR 866), her treating nephrologist identified her kidney disease as "stable if not improving[.]" (AR 505.) Only a month and a half after the description, plaintiff's kidney disease was downgraded to "stage 3 – with improving function." (AR 876.) The ALJ's consideration of plaintiff's symptom testimony and the medical record has the support of substantial evidence.

C.    Activities

The ALJ found plaintiff's apparent ability to walk on a nearly daily basis, resulting in a forty pound weight loss, to indicate her symptoms of dizziness and the severity of her knee pain were not as significant as alleged. (AR 533.) While plaintiff later reported a need to decrease her activity level due to knee effusion, "this was not until October 2015, thus indicating that she continued to engage in an increased level of activity for several months following the appointment at which she reported that she had been trying to walk on a daily basis." (*Id*. (citing AR 883).)

While receiving mental health treatment, plaintiff continued "to spend time with family and friends and [] was even spending time in a relationship, all of which indicate that she was not completely isolated during this time period." (AR 534 (citing AR 484, 487, 489, 499).) At hearing, plaintiff testified she speaks to a woman who resides in her apartment building and has a friend who comes by in the afternoons after her caregiver leaves. (*Id.*) This indicated plaintiff maintained some level of social functioning across the longitudinal period. Plaintiff also gathered documentation required for low-income housing assistance programs, sought out the assistance of her counselor in regard to housing, contacted an organization to acquire furniture for her new apartment, and reported improved symptoms after getting her place. (AR 534-35.)

The ALJ, in considering the above, properly considered evidence of plaintiff's activities as contradicting her testimony as to the degree of her physical and mental impairments. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For this reason, and for the reasons discussed above, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony.

<u>Lay Testimony</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

The ALJ described a third party function report completed by plaintiff's daughter, Maudie Olmstead, in July 2011. (AR 307-14, 539.) The ALJ credited Olmstead for providing statements regarding plaintiff's functioning, acknowledged that, as plaintiff's daughter, Olmstead has been in a strong position to observe her functioning across a longitudinal period, and accounted for Olmstead's statements to some extent by assessing an RFC for a limited range of sedentary work,

with additional limitations in social and cognitive functioning. (AR 539.) However, the ALJ gave the lay statements only partial weight overall upon finding the alleged degree of limitation somewhat inconsistent with the record as a whole, which showed overall stable functioning in terms of physical impairments and an overall lack of mental health treatment, coupled with consistent findings of largely intact mental functioning when plaintiff did present for treatment. (AR 539-40.) The ALJ also found the degree of impairment alleged by Olmstead somewhat internally inconsistent with other statements, including plaintiff's ability to prepare simple meals on a daily basis, that she has friends who help her with household chores, is able to handle various aspects of her personal finances, including paying bills and utilizing money orders, makes jewelry about every couple months, and interacts with others on the telephone. (AR 540 (citing AR 309-11).)

Plaintiff denies either of the reasons offered by the ALJ are specific, germane, and supported by substantial evidence. She argues the alleged internal inconsistencies do not justify the ALJ's total rejection of Olmstead's observations and that the consistency of her testimony with that of her daughter warrant granting both greater weight.

The ALJ did not wholly reject the lay testimony. He partially accounted for it by assessing limitations associated with plaintiff's physical and mental impairments. The ALJ further rationally interpreted the record and properly discounted the lay testimony upon finding it inconsistent with the medical evidence, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001), and internally inconsistent.

Plaintiff also notes the ALJ did not address a function report completed by Olmstead in June 2011. (*See* AR 515-19.) As the Commissioner observes, that statement was addressed in a prior ALJ decision. (AR 30-31.) In any event, "[w]here lay witness testimony does not describe

any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless. *Molina*, 674 F.3d at 1115-22. In this case, Olmstead's lay statements did not describe limitations not already described by plaintiff and the ALJ's reasons for discounting plaintiff's testimony apply equally well to the lay testimony. As such, any error in the failure to address the lay testimony is properly deemed harmless. *Accord Burkett*, 2018 U.S. App. LEXIS 11183 *9 (finding no error in the failure to address Olmstead's testimony because it fell outside the period at issue and any error harmless because "Olmstead's testimony described the same limitations as Burkett's own testimony.")

RFC and Step Five

Plaintiff avers error in the RFC and step five finding given the failure to include all of the limitations identified by Nixon, plaintiff, and Olmstead. Having found no reversible errors, plaintiff's mere restating of arguments also fails to establish error. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

**CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>11th</u> day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 21